Good morning and may it please the court, I'm Gail Strasfeld, I represent Charles Flores who asks that this court reverse the denial of the motion to suppress. I raised three points where I think the district court got it wrong in denying the motion. The first is that the court found that there was probable cause to arrest Mr. Flores and I've argued that there wasn't sufficient probable cause to arrest him. Could you keep your voice up please counsel? Yes, I will. The second and third reasons why the district court made two mistakes below is in its findings on the independent source doctrine and essentially it found that the warrant that was eventually issued had a source independent from the warrantless entry into the room. I'd first like to just briefly review a couple of points that the court relied on to find his probable cause, finding to arrest Mr. Flores that I think was not warranted to rely on. The tip that came in to the police, the anonymous second tip, I gave it to somebody else, and that tip said in essence that there was a group from New York that was in the hotel in Brunswick, Maine, selling cocaine base, $1500 pieces. In the court, in its findings of what supported probable cause, it said that the hotel manager confirmed that a group, which included two African-American men from New York, one of whom was obese, was staying in room 131. Now the tip never said, never identified the race of the people that were staying, that were in the hotel, so the manager couldn't have confirmed that part, that part of the tip was not confirmed. But the manager confirmed that it was a group from New York, gave the room number, and the description of whom the group included becomes relevant because of subsequent observations by the officers. You kind of give too literal an interpretation to that sentence. Well, I don't think the manager, actually the manager did not confirm that both people in the room came from New York. But he said the group came from New York. I understand that. He said many individuals. But only one person, the manager only knew that one person came from New York. The officers only knew... Did the manager testify? Yes. Okay, and did the manager say he only knew that one person came from New York? The manager testified that the person who rented the room came from New York. New York, that's right. Not that the other person came from New York. And I think that's important because until the arrest, the officers don't know that Mr. Flores had an identification that indicated he came from New York. They don't know that. And if they don't know that then, then you can't use that in saying that there's probable cause to arrest him. That's why I think it's important. But did you just say, I take the point you're saying that the manager when he testified, did the manager testify... I'm sorry. Okay, I didn't know if I said anything wrong. When the manager testified, did the manager testify that the group staying there was from New York? No. He just testified. She just testified that the person, there were people staying, she did say there were people in the room. Yeah. She said that Mr. Anthony Rodriguez rented the room. His ID showed that he was from New York. And then she also said there was this obese person who was in that room. Correct. Okay. She did. So just to follow, you're saying, I think implicitly, it would be an unreasonable inference for the officer to assume that the other person in the room was from New York. Right. And the court used that to say that there was a link between Mr. Flores and the tip and the room, right? But your argument depends on it being unreasonable to infer that when the officers hear from there was a room rented in the name of a person from New York and there was more than one person in the room and that room was rented as the only one that was taken in cash, it's unreasonable to assume that the other people in that room that the manager said were there were also from New York. Yes. Okay. And another part of what the court relied on in terms of the manager's identification of the individuals in the room, the trooper testified that the manager told him one of the men was an obese African-American man. In fact, the manager testified at the hearing that there were two African-American men, one was larger and one was a smaller guy. Okay. So there's a little bit of a difference there. That seems important to me. The manager did not testify that anyone in the room was obese? No, she never used the word obese. No, it was only the trooper that used the word obese. He used it in his testimony and he used it in the search warrant. But there's nothing to contradict the trooper's testimony that he was told by the manager that one of the men was obese. We're concerned on probable cause with what the trooper reasonably believed. You're right, Judge, that no one examined, no one asked the manager, did she say obese? But they did ask the manager, what did you tell him? And she said, I told him there was a larger man and a smaller guy, both African-American. I'm sorry. Go ahead. The officer testified that he was told by the manager that one was obese? Correct. That's one difference. But I think what's really important here is that that's just not enough information to describe a person. So I think you have to, race is used to identify people. We know that. And it's properly used. But usually you have to couple that with something that's really very specific that's going to identify the person. When you say that's not enough to describe a person, what's not enough to describe a person? An obese or a large African-American man. That's true if you just, you can take each one of several facts that contribute to a calculus of probable cause, and you can criticize the particular fact. But we're dealing here with a constellation of facts. And what we've got to decide is whether it's reasonable to draw the inference, an inference of probability, not an inference beyond a reasonable doubt, from that constellation of facts. And certainly the fact that the officer knew that there was an African-American man, two African-American men who were part of the party, that one of them was variously described as an obese man or a large man, and then with a whole bunch of other circumstances spies the defendant in the parking lot and then observes what he observed about the defendant's activity and the defendant matches up with those descriptions, that certainly contributes to whether or not there's a basis for a probable cause finding. Well, what I would say to that, Judge, is if you're taking away several of the factors, which I argue you ought to take away, you're not left with sufficient probable cause. You may have a reasonable suspicion to stop the guy and talk to him and ask him questions, but you don't have enough for probable cause. And I see my time is really going fast, so I'd just like to turn to the independent source doctrine. So even if this court finds that there was sufficient probable cause to arrest, you still have to reach the independent source doctrine. And the court made a couple of mistakes there. The first mistake is that the court said that the warrant that was ultimately obtained, that the officer was going to get that warrant even before he entered the room. And I don't think the evidence supports that. He didn't testify to that. He testified he was going to secure the room, which for him didn't mean posting an officer outside and watching that no one went in there. For him it meant let me take Mr. Flores' key, let me put it into the lock, let me unlock the door, let me go in there, conduct a search, stay there for six hours, and then get a search warrant. Is there any controversy over whether that initial sweep or whatever you want to call it was longer than ten seconds or so? There's no evidence to say that going through the place was longer than those seconds. That's right. And then what happened? Well, what happened was somebody knocks on the door to look for Mr. Flores, essentially. And then they go on. They interview that person. In another room? In another room. So I want to know what's happening in 131 during that time and for the next several hours. Is the door open? Is it shut? Is there an officer inside? Is Flores inside? Mr. Flores is inside. At some point the cuffs are taken off of him and he's allowed to sleep on the bed that's in there. I think there were several. During the course of those six hours there were several officers coming and going in there. And I don't know whether the door was open. I suspect it was or at least part of the time since people were coming in and out. But I think what's critical there, what I think is critical is the fact that without turning, without knowing that the key that Mr. Flores had unlocked the door, I don't think the officer would ever have sought a search warrant. He would never have gone to get it. And he essentially says that if he hadn't gone into the room when he went into the room, but rather had stayed in the room opposite the hall in room 132 and conducted surveillance, he would have gotten a search warrant then. Can I just understand the significance of the point you're making? If what you're saying is true, is the idea that even if, without putting the card key in to directly link Flores to that room, even if without doing that there would have been enough for probable cause to seek a warrant, the fact that I know you can test that, but even if that's true, you're saying because of the officer's testimony about what he said he would have done, it doesn't matter because he only said he would have gone and got the warrant because the key was used. Is that the idea? Well, he doesn't say it's because of the key. So then what's the significance of this point? Well, I'm saying that even if he had decided, all he had decided before he went into the room was that he was going to go into the room and then determine whether he was going to seek a search warrant. And under the independent source doctrine, you have to show that nothing which you learned from being in the room motivated you to get a search warrant. And what I'm saying is that the fact that the door was opened with that key, unlocked with that key is what motivated him to get the search warrant. Thank you. For the other points, I'll rest on my brief. Thank you. Good morning, Your Honors. May please support Benjamin Block on behalf of the United States. I'd like to begin by responding to the last point that Ms. Strasshold was making. Could you pull your mic up even more? Yes. I appreciate it. I think this is very important. The assertion that the officer's testimony was that had he not used Mr. Flores' key to enter the room at that time, he would have simply maintained surveillance, I think is a misreading of the record. But the officer testified to, and this is on page 111 of the joint appendix, where he says he would have continued surveillance. He's then asked why by the prosecutor. And his response is, I don't want anything introduced or taken out in between me securing the room and the search warrant. So the surveillance that he's talking about at that time is not surveillance as part of an ongoing investigation. It is surveillance to maintain the security of that room. With respect to the point. Well, before you leave that point, it's my understanding that the trooper testified at some point that once he witnessed what he thought was a drug transaction and arrested Flores in the parking lot, that it was a certainty from that point on that he was going to attempt to get a warrant to search the room. Yes, that's correct, Your Honor. And the district court, in its findings, specifically credited that testimony. It did, and it did so acknowledging that it wasn't bound to simply accept the post hoc statement of the officer. But the court looked at the surrounding facts and circumstances and determined that those circumstances supported the officer's testimony, that that was his intent at the time. Is it clear from the record that the officer, when he made that representation about what his intention would have been upon the arrest, that the officer was not incorporating into that judgment about what he would have done the facts he learned from effecting the arrest that have to be excluded, like the statements and the... Well, I think it's very difficult to ask the officer to remove those factors from what his state of mind was at the time. Is that a problem for you? I don't believe so, because... Well, why not? Because if the judgment about what he would have done... I don't know if this is right, but if the judgment about what he would have done in seeking a warrant was dependent on things that he can't rely on for it to be an independent source, I just... Well, I think there are different components to it, and part of the analysis is subjective and part of the analysis is objective. And so with respect to the independent source doctrine, there is a subjective component of what would the officer have done, what did the officer intend to do. But the objective analysis is... Let me just make it easy for you. Suppose the officer testified. At the moment I actually put the handcuffs on, I wasn't sure I was going to get the warrant, but after I heard the statements during questioning that Flores said, then I knew I was going to get the warrant. Would that be okay? I think his motivation in... Just answer that question. Would that then be okay? If that was the testimony. It would if the subsequent warrant had sufficient probable cause if those statements were excised. So there may be... Well, I thought his intention was part of the test. And if his intention was tainted, in other words, if the only reason he would have sought the warrant was because of the tainted thing, does that not cause a problem for you? No, I don't believe that under the independent source doctrine, that the officer's subjective intent has to be entirely... Untainted? Untainted. Only the subsequent independent source, the warrant, which is... What's the taint? Is it the Miranda violation? Under Judge Barron's hypothetical... So I thought our law under Parker and the Supreme Court under Patain, the only remedy there is exclusion of the statements, not that you then can exclude physical evidence that comes in part as a result of those statements. Do you know which way it goes? Well, I believe Your Honor is correct, but in the context of the motivation to seek the warrant, which is what I understand Judge Barron's question to be, I don't think that the officer's motivation, whether it was partly due to a Miranda violation... I'm suggesting that that's not how the taint analysis works in any event, and I'm just wondering if you know the answer to that under Patain and Parker. Your Honor, I could not answer that question. Mr. Glock, I'm a little bit baffled by your analysis. Maybe I misunderstand the record, but my understanding was that the trooper testified that from the moment he made the arrest, he knew that he was going to attempt to search the room. Is that wrong? No, Your Honor. Well, at the moment he made the arrest, there were no statements yet made. That's correct. So why are we talking about the statements? In fact, if the district court believed literally the statement that the trooper made, that ends the matter. The trooper said, the moment I arrested him, at that point they already had abundant information. They had the tip. They had abundant information about Room 131, about the activity associated with it, etc. That had all been confirmed to some degree by their observations of Flores and particularly by their witnessing what they believed to be a hand-to-hand drug sale and, for what it may be worth, by observing Flores himself committing a violation smoking marijuana. Correct. So if the district court believed that statement, and the district court said it did, then we never get to the question of taint. We just get to the question of, was that quantum of information that the district court had at that moment, that the officer had at that moment, enough to make believable or credible his statement that he knew from that point forward that he was going to attempt to search the room? Correct. And so I agree with Your Honor. I don't think that he was in fact motivated by any tainted information. I was simply responding to Judge Barron's question about whether if that were part of the motivation. Just to be clear, just so I'm clear, the reason I asked my hypothetical was because I first asked you whether we know from the record whether the officer, in making the statement about what his intention was, was potentially relying on things he learned in the course of effecting the arrest. And you said it's not clear from the record. But now you're saying it is clear from the record. It's fine. It's either is or isn't. That's very fair. That's fair. I think that Judge Steliot is correct. His testimony was that he intended, at the moment that he approached and arrested Mr. Flores, that he intended to get a search warrant. I think that the subsequent question of whether or not he had probable cause to search the room, that becomes an objective test where we can excise from the warrant any possibly tainted statements. And his testimony at pages 98 to 100 and page 207 of the appendix is where he explains that it was fully his intention to obtain that search of the room, either by consent or by warrant. And I think that the record is also clear that the key and his use of the key was not determinative in any way. The court found a number of facts that he sets forth on page 21 of the defendant's addendum in the court's opinion. The facts that link Flores to that room and provide the nexus. And Officer Pappas actually testified that had he not used Mr. Flores' key, he would have sought a key from management to open the room to perform the security sweep. That's at page 101 of the appendix. And so I think that it's a little bit of a red herring to overly focus on his use of the key card. It's not something that the district court relied on and it's not something that was dispositive to the law. The district court didn't rely on it for its independent source analysis? No, it relied on the fact that Mr. Flores had, and if I could just complete my thought, that Mr. Flores had a key to the hotel because it showed that he was an occupant of the hotel. But he didn't rely on the fact that that card was associated with room 131. Thank you both. Thank you. Thank you.